UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| NEIL RORY SHARP,<br><br>           Petitioner,<br><br>v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security Administration,<br><br>           Respondent. | Case No. 4:18-cv-00270-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Neil Sharp's Petition for Review of the Respondent's denial of social security benefits, filed on June 13, 2018. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

# PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for a period of disability and disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, on July 8, 2014. This application was denied initially and on reconsideration, and a hearing was conducted on November 27, 2016, before Administrative Law Judge (ALJ) Stephen Marchioro. After considering testimony from Petitioner, a medical expert, and a vocational expert, ALJ Marchioro issued a decision on December 12, 2016, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on April 13, 2018.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of May 16, 2014, Petitioner was thirty-two years of age. Petitioner completed the seventh grade and did not complete additional formal education. His past relevant work experience includes work as a construction laborer.

# SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of May 16, 2014. At step two, it must be determined whether the claimant suffers

from a severe impairment. The ALJ found Petitioner's degenerative disc disease, baker's cyst (left knee), major depressive disorder, social phobia disorder, and intermittent explosive/impulse control disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's musculoskeletal and mental impairments did not meet or equal the criteria for any listed impairment. The ALJ considered Listings 1.04 (Spine Disorders), 1.02 (Major Dysfunction of a Joint), 12.04 (Depressive Disorders), and 12.06 (Anxiety Disorders). (AR 216-216.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and then determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner retained the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a), with limitations. The ALJ found Petitioner could occasionally operate foot controls with his left lower extremity; occasionally climb ramps and stairs; never climb ropes, ladders and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and that he must avoid all use of unguarded moving mechanical parts and exposure to unprotected heights. The ALJ further limited Petitioner to performing work tasks consisting of only simple, routine, repetitive tasks, with occasional interaction with the public, coworkers, and supervisors.

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms he alleged, but that his statements

**MEMORANDUM DECISION AND ORDER - 3**

about the intensity, persistence, and limiting effects of his conditions were not entirely consistent with the medical evidence, his treatment history, and his daily activities. (AR 219.) In doing so, the ALJ considered the opinions of Petitioner's treating providers, Dr. Gardner and Howard Carroll, LCPC. The ALJ found that a review of the medical evidence did not support Dr. Gardner's medical source statement limiting Petitioner to sitting for one out of every eight hours and standing and walking for less than one out of every eight hours, or his opinion that Petitioner had significant bilateral manipulative and reaching limitations. (AR 222.) However, the ALJ credited Dr. Gardner's opinion in terms of its "consistency with a sedentary RFC," according that aspect of the opinion "considerable weight."

The ALJ gave Howard Carroll's mental RFC opinion "little weight," finding his opinion that Petitioner suffered from extreme and marked limitations in several areas of social interaction "inconsistent with the claimant's treatment notes" from multiple providers. The ALJ found also that Carroll's opinions were inconsistent with those of Dr. Farnsworth, who provided an opinion as a consulting psychologist and testified at the hearing. Dr. Farnsworth's opinion is that Petitioner had mild limitations in most aspects of his social functioning, as he was stabilized with medication. (AR 223.) The ALJ nonetheless gave Dr. Farsnworth's opinion "partial weight," because of its inconsistency with Petitioner's testimony and treatment evidence. (AR 223.)

Based upon his evaluation of the record and the hypothetical posed to the vocational expert, the ALJ found Petitioner was able to perform work as a touch-up inspector, spotter (table worker), and dowel inspector, all of which are sedentary jobs

**MEMORANDUM DECISION AND ORDER - 4**

available in significant numbers in the national economy. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do her previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not

mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner argues the ALJ erred at step four of the sequential evaluation. Petitioner asserts the ALJ improperly evaluated the opinions of his treating providers, Dr. Gardner and counselor Carroll. Petitioner argues the ALJ's determination that treating physician Gardner's opinion should be dissected, with parts given considerable weight and other parts rejected, was in error and not persuasively explained. Petitioner asserts also that the ALJ erred by discounting the opinion of Petitioner's counselor, Howard Carroll, LCPC, who had observed and counseled Petitioner over the course of one year and wrote extensive notes regarding Petitioner's level of functioning.

Accordingly, Petitioner argues the ALJ's errors resulted in an inaccurate RFC that

failed to account for all his medically determinable impairments and their effect as a whole on his capacity to perform work. Petitioner asks the Court to reverse the ALJ's decision and remand for further consideration. Dr. Gardner's and counselor Carroll's opinions will be considered in turn.

1.  **Whether the ALJ Improperly Weighed Dr. Gardner's Opinion**

Dr. Gardner, along with other providers with the Steele Memorial Clinic practice group,[2] treated Petitioner during 2015 and 2016. Records specific to Dr. Gardner's examinations indicate he recommended Petitioner use a cane and other safety devices as appropriate, and to stretch before walking, to help reduce falls. (AR 1172.) During an office visit on February 12, 2016, Dr. Gardner noted Petitioner had a limited range of motion in his lumbar spine, and was using a cane. (AR 1027.) Dr. Gregory Behm, an orthopedist, conducted a consultative examination on February 4, 2016, during which he noted Petitioner had a "severely antalgic gait with the Lt knee kept flexed almost at 25 [degrees] with an extraordinarily short stance phase." (AR 1064.) The consultative examination notes were later provided to Dr. Gardner.

On June 10, 2016, Dr. Gardner recommended that Petitioner should follow up with his chronic pain management team. (AR 1039.) Petitioner had a pain management follow up with Dr. Jeanette Goble at the Steele Memorial Clinic on June 29, 2016. (AR 1045.) Upon examination, Dr. Goble noted decreased range of motion, lower extremity pain secondary to edema, and lower extremity neuropathy secondary to uncontrolled

---

[2] Drs. Owen and Scholle also treated Petitioner.

**MEMORANDUM DECISION AND ORDER - 7**

diabetes, which also caused pain. (AR 1045.) Dr. Goble noted it was difficult to examine Petitioner "as he has pain everywhere." (AR 1045.) At a follow up visit with Dr. Gardner on September 23, 2016, Petitioner reported falling due to his knee giving out, and also having difficulty with activities of daily living because of pain and weakness in his left knee. (AR 1172.) Physical examination revealed weakness in his left leg. (AR 1173.)

On October 21, 2016, Dr. Gardner completed a physical RFC assessment. (AR 1196.) Dr. Gardner opined Petitioner will miss more than four days of work each month due to back pain from degenerative disc disease in his lumbar spine. He also was of the opinion Petitioner would need to take breaks during an 8-hour workday every thirty minutes, would need to recline or lie down during a typical work day, could walk up to one city block before having to rest due to pain, could sit for one hour, and could stand/walk for one hour. Dr. Gardner indicated Petitioner could lift only ten pounds occasionally. (AR 1196.) Dr. Gardner also was of the opinion Petitioner had significant bilateral manipulative and reaching limitations. (AR 1196.)

The ALJ selectively credited Dr. Gardner's opinion. He gave Dr. Gardner's 10-pound lifting restriction considerable weight, and gave the overall opinions "considerable weight in terms of the consistency with a sedentary RFC," but gave Dr. Gardner's opinion "little weight" in terms of his assessment of restrictive manipulative and reaching restrictions and to the extent Dr. Gardner imposed exertional restrictions in excess of sedentary limitations. (AR 222.) The ALJ found Petitioner's treatment records inconsistent with Dr. Gardner's sitting and standing restrictions that "essentially render the claimant bed (or recliner) ridden," but the ALJ did not specify which treatment

**MEMORANDUM DECISION AND ORDER - 8**

records he reviewed to make that determination. The ALJ concluded that Dr. Gardner's opinion regarding Petitioner's restrictive manipulative and reaching restriction was unsupported in the record, and that Dr. Gardner did not provide any explanation for those limitations.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").

ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating

**MEMORANDUM DECISION AND ORDER - 9**

physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citation omitted); *see also* SSR 96-2P, at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by

clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, while it may have been appropriate to give considerable weight to one portion of Dr. Gardner's opinion and less weight to another, *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989), the ALJ did not provide specific and legitimate reasons supported by substantial evidence for doing so. Much more specific reasoning was necessary, rather than a perfunctory statement that unspecified treatment records did not support Dr. Gardner's sitting and standing restrictions. (AR 222.) The ALJ did not point to any place in the record that was inconsistent with Dr. Gardner's opinion. While the ALJ summarized the medical records documenting Petitioner's treatment history for his multiple musculoskeletal complaints earlier in the written opinion, (AR 219-221)[3], the ALJ did not explain how Dr. Gardner's more restrictive limitations were consistent with a sedentary RFC. An explanation is important here, because the ALJ's RFC determination did not represent the full range of work contemplated by a sedentary RFC due to Petitioner's other physical and mental limitations.

Sedentary work involves a certain amount of sitting and walking in carrying out job duties.

> Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.
> "Occasionally" means occurring from very little up to one- third
> of the time, and would generally total no more than about 2
> hours of an 8-hour workday. Sitting would generally total about
> 6 hours of an 8-hour workday. Unskilled sedentary work also

---

[3] The ALJ summarized treatment records from Dr. Dye, who treated Petitioner's lower extremity pain and edema; Dr. Swensen and Dr. Scholle, who treated Petitioner's multiple musculoskeletal complaints, including back and knee pain; Dr. Gardner, discussed above; Dr. Swenson, who treated Petitioner's knee pain; and Dr. Behm, who examined Petitioner's knee and assessed Petitioner's multifaceted pain complaints. (AR 219-220.) However, the ALJ did not explain why these medical findings supported his conclusion that Dr. Gardner's opinion deserved little weight to the extent the opinion imposed exertional restrictions in excess of sedentary lmiations. (AR 222.)

**MEMORANDUM DECISION AND ORDER - 11**

>involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p.

Essentially, by rejecting Dr. Gardner's opinion to the extent it imposed exertional restrictions related to standing, walking, and sitting in excess of sedentary limitations, the ALJ discounted those aspects of Dr. Gardner's opinions and gave them little persuasive weight. In doing so, the ALJ did not explain what evidence was inconsistent with a determination that Petitioner was not capable of standing for more than one hour and sitting for a total of more than one hour in an eight-hour work day, or what evidence contradicted the portion of Dr. Gardner's opinion that Petitioner would need breaks during work every thirty minutes.

Much more specific reasoning by the ALJ was necessary, given Petitioner's complicated pain complaints as recorded by Dr. Behm and Dr. Goble, neither of whom indicated in their treatment notes that Petitioner was malingering. Further, the ALJ failed to reconcile Petitioner's reports of pain attributable to his uncontrolled diabetes, which resulted in significant lower extremity edema and venous ulcers. (AR 219.) Nor did the ALJ explain how the use of a cane is consistent with a sedentary RFC. (AR 220, 222.)

The Court therefore finds that the ALJ did not provide specific and legitimate reasons to discount a portion of Dr. Gardner's opinion, because the ALJ did not identify what parts of the record supported his rationale for doing so.

2. **Whether the ALJ Improperly Weighed Howard Carroll, LCPC's Opinion**

Howard Carroll, a licensed counselor, as well as other practitioners associated with Lemhi Valley Social Services, provided mental health counseling services to Petitioner between November of 2015 and October of 2016. Carroll assumed Petitioner's care from others in the clinic in or about August of 2016, to address Petitioner's impulsivity and anger issues. (AR 994.)

On October 26, 2016, Carroll completed a mental residual functional capacity assessment. (AR 1199.) Carroll was of the opinion that Petitioner had marked limitations with regard to his understanding and memory; the ability to carry out short and simple instructions; maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others; and in several other areas. (AR 1199 – 1201.) Additionally, Carroll noted areas of moderate limitation with regard to Petitioner's ability to make work related decisions, perform at a consistent pace, and ability to ask simple questions or request assistance. (AR 1200.) Carroll also was of the opinion Petitioner exhibited extreme limitations with regard to interacting appropriately with the general public and marked limitations regarding the ability to get along with coworkers. (AR 1200.) Carroll explained that his opinions were based upon personal interviews with Petitioner and the results of Petitioner's Personality Assessment Inventory ("PAI"). (AR 1200.) In the comments section of his assessment, Carroll provided detailed explanations, but the ALJ commented that much of it was illegible. (AR 1200, 223.)

The ALJ accorded Carroll's opinion "little weight," because the ALJ found the

**MEMORANDUM DECISION AND ORDER - 13**

opinion was inconsistent with Petitioner's treatment notes indicating Petitioner was significantly more functional that Carroll suggested, and also that the opinion was inconsistent with Dr. Farnsworth's opinion, which the ALJ in turn gave only partial weight. (AR 223.) Other than indicating that the "normal exam findings from multiple providers [were] cited above," the ALJ provided no further analysis.

Although Carroll's opinion is not entitled to the same deference as owed an acceptable medical source, the ALJ failed to provide germane reasons supported by the record for affording Carroll's opinion only "little weight". (AR 223.) *See Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (ALJ must give germane reasons for rejecting the opinion of an "other source"). Rather, the ALJ gave two perfunctory reasons with no analysis, which does not provide for meaningful judicial review.

First, the "normal findings on mental status/psychological exams" relied upon by the ALJ and referenced earlier in his decision were not provided by mental health providers. (AR 222.) Rather, they were conclusory statements rendered by orthopedists and general practitioners (Drs. Gardner, Scholle and Goble) treating Petitioner for his pain, sleep apnea, and diabetes, as well as his other general medical complaints. In fact, Dr. Scholle, a practitioner at Steele Memorial Medical Center, specifically deferred to Dr. Hazle, Petitioner's psychiatrist, for Petitioner's psychotropic medication management in relation to Petitioner's mental health treatment. (AR 221, 1025.)

Second, the record reflects Petitioner's mental health symptoms waxed and waned over the course of treatment. For instance, Dr. Hazle, who provided psychiatric medication management via tele-medicine, noted on May 24, 2016, that Petitioner's

**MEMORANDUM DECISION AND ORDER - 14**

mood had been stable, until the last three days – when he "really blew it" and was violent and destructive at home. (AR 1083, 221-222.) Dr. Hazle's observation, that even with medication management Petitioner continued to have violent outbursts, is consistent with therapist Maas's and counselor Carroll's observations regarding the same behavior. *See* Pet. Brief at 17 (citing to Mass's and Carroll's treatment records at AR 988, 989, 997, 1000, 1003, 1177, 1193, and 1191.)

Similarly, Thomas Maas, LMFT with Lemhi Valley Social Services, who provided individual counseling services on a regular basis from November of 2015 until his retirement in or about May of 2016, noted that Petitioner struggled to progress with his goals, and continued to struggle with stress, anxiety, anger management, and depression. (AR 988 – 993, 1003-1014.) At his initial intake session in November of 2015, Maas was of the opinion that Petitioner was an "excellent candidate for mental health services," noting that Petitioner's symptoms have "created barriers to leading a relatively normal life," and have "deeply affected his daily functioning in deleterious ways." (AR 986.) Symptoms noted were anger, depression, low self-image, and poor judgment. (AR 984.) Maas diagnosed Petitioner with disruptive mood dysregulation disorder, and possible major depressive disorder – moderate. (AR 984, 992-993.)

Third, the ALJ does not discuss Carroll's treatment notes and objective observations in a manner affording meaningful judicial review, given that Carroll's mental RFC was based upon the same. Upon the assumption of Petitioner's care on

**MEMORANDUM DECISION AND ORDER - 15**

August 18, 2016,[4] Carroll outlined a treatment plan to focus on Petitioner's impulsivity and anger issues. (AR 994.) On September 28, 2016, Carroll assessed that Petitioner's anger was escalating, and that Petitioner had shown only "minor success in addressing his progress." (AR 1177.) Nor had Petitioner achieved the cognitive behavioral objectives set for him. (*Id.*) Petitioner reported on that visit that, while the medication helped, he was having difficulty "stepping up to cash register – feeling crowded." (AR 1177.) On October 12, 2016, Petitioner reported to Carroll that he had recently been involved in another physical confrontation, and Carroll noted Petitioner's PAI results[5] "exhibited a number of extremely high elevations." (AR 1193.)

Last, the ALJ does not reconcile his assignment of "partial weight" to Dr. Farnsworth's opinion,[6] with his assignment of "little weight" to counselor Carroll's opinion. On the one hand, the ALJ credits Dr. Farnsworth's "better-founded opinion" as a reason to discount Carroll's opinion, yet, the ALJ discounted Dr. Farnsworth's opinion as being "inconsistent" with Petitioner's testimony and the mental health treatment notes provided by Carroll, Maas, and Dr. Hazle, without further explanation. Petitioner's treatment notes reflect that Petitioner's mental health symptoms waxed and waned, and were not always well controlled with medication. The ALJ did not explain why, on the one hand, he cited to Dr. Farnsworth's opinion as a means to discredit Carroll's opinion, and then assigned only partial weight to Dr. Farnsworth's opinion because the opinion

---

[4] Carroll was also a practitioner at Lemhi Valley Social Services.
[5] The PAI test results are not part of the administrative record.
[6] Dr. Farnsworth, the consulting psychologist, provided testimony at the hearing.

**MEMORANDUM DECISION AND ORDER - 16**

was inconsistent with Carroll's, Maas's, and Dr. Hazle's treatment notes.

For the above reasons, the Court finds that the ALJ improperly evaluated the medical opinion evidence, and failed to provide specific and legitimate reasons, or germane reasons, supported by substantial evidence in the record when assigning weight and determining whether to reject or accept the opinions of the mental health care providers, as discussed above.

Accordingly, the proper course is to remand for further proceedings. *Harmen v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]here the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: August 13, 2019

_____
Honorable Candy W. Dale
United States Magistrate Judge